**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:25-CV-00007-DJH**

**DEREK MORTLAND** **PLAINTIFF**

**VS.**

**SACHI, LLC** **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

The Parties in this Americans with Disabilities Act (ADA) case have reached an impasse on several issues during the fact and expert discovery process.[1] First, Defendant Sachi, LLC ("Defendant") has filed a Motion to Strike Plaintiff's April 30, 2026 Supplemental Expert Reports. (DN 35; DN 44). Second, with the Court's permission, Plaintiff Derek Mortland ("Plaintiff") filed a Motion for Protective Order seeking to prohibit several categories of written discovery.[2] (DN 43; DN 50). Third, the Parties dispute the reasonableness of Plaintiff's expert fee. (*See* Exhibit 1 – Plaintiff's Apr. 28, 2026 Memo; Exhibit 2 – Defendant's Apr. 28, 2026 Memo). Lastly, Defendants have filed two motions to extend the case deadlines based on the aforementioned discovery motions that are pending. (DN 47; DN 48; DN 52; DN 53).

[1] The District Judge has referred this case to the undersigned United States Magistrate Judge for resolution of all non-dispositive matters, including discovery issues, pursuant to 28 U.S.C. § 636(b)(1)(A). (DN 10).

[2] District courts retain a broad discretion to manage their dockets, including *sua sponte* striking untimely filed documents. *C.S. v. McCrumb*, 135 F. 4th 1056 (6th Cir. 2025), *Franke v. Norfolk S. Ry. Co.*, No. 21-3848, 2023 U.S. App. LEXIS 11717 (6th Cir. May 12, 2023) (citing *ACLU of Ky. v. McCreary County*, 607 F. 3d 439, 451 (6th Cir. 2010) *See Bunn v. Perdue*, 966 F.3d 1094, 1099 (10th Cir. 2020) ("District courts are afforded great discretion regarding control of the docket and parties.")). Here, Plaintiff filed his reply brief seven days after his deadline for doing so passed, and Plaintiff made no effort to excuse his tardiness. (*See* DN 40; DN 51). Moreover, brief review of Plaintiff's reply brief reveals Plaintiff presenting new arguments, which is inappropriate on reply. *U.S. v. Dener*, No. 17-CR-20315, 2020 WL 5653303 at *2, n.2 (E.D. Mich. Sept. 23, 2020) (*citing White v. U.S.*, 23 F. App'x 570, 571 (7th Cir. 2001) ("a reply brief is not the proper vehicle to raise new arguments")). For these reasons, the Court finds Plaintiff's reply to be untimely and inappropriate and will not consider it in adjudicating Plaintiff's Motion for Protective Order.

## I. Background

Plaintiff Derek Mortland is a "person with physical disabilities" and "requires use of a wheelchair to travel about in public." (DN 1, at ¶ 5). On or around June 11, 2024, Plaintiff booked a one-night stay at a La Quinta Inn & Suites in Louisville, Kentucky that advertised it had accessible guestrooms with several accessible amenities. (*Id.* at ¶ 14-15). Defendant Sachi, LLC owns and operates the La Quinta Inn where Plaintiff stayed. (*Id.* at ¶ 6). Plaintiff says he utilized this La Quinta Inn as a stopover on his way to conduct a Rule 34 inspection of other premises in Bowling Green, Kentucky. (*See* DN 24).

Throughout his stay at the La Quinta Inn, Plaintiff claims he "personally encountered architectural barriers which discriminated against him and denied him the full and equal access to the property." (DN 1, at ¶ 16). As a result, Plaintiff initiated this action against Defendant Sachi LLC, claiming violations of the ADA, the Kentucky Civil Rights Act (KCRA), and the Kentucky Consumer Protection Act (KCPA). (*Id.* at ¶¶ 29-56). Plaintiff seeks injunctive relief, as well as general and compensatory damages since the filing of his Complaint. (*Id.*).

Though denying that he is in ADA "tester," Plaintiff is a serial litigant, with over 140 legal actions filed from 2021-2025.[3] (DN 43-1, at PageID # 1635; DN 24, at PageID # 481). Plaintiff serves as the President of Advanced Access, LLC, "a consulting company specializing in accessibility and barrier removal." (DN 24, at PageID # 492; DN 43-6, at PageID # 1692-93). Through Advanced Access, Plaintiff is serving as his own ADA expert in this case and produced a Site Accessibility Evaluation of Defendant's property.[4] (DN 43-1, at PageID # 1635).

---

[3] In denying the Defendant's Motion to Deem Plaintiff a Vexatious Litigation (DN 22), the District Judge noted that although Plaintiff has filed a large number of cases, he has never been sanctioned for dishonesty and there is no evidence that any of his lawsuits were frivolous or intended to harass. (DN 56).

[4] Defendant alleges that Plaintiff's counsel has hired Plaintiff to serve as his own expert in all of the accessibility cases he files. (DN 22-1, at PageID # 86).

II. Defendant's Motion to Strike Plaintiff's Expert Reports (DN 35)

A. Is Plaintiff's Supplemental Report an appropriate Rule 26(e) supplement?

On August 28, 2025, one day before the Plaintiff's expert disclosure deadline, Plaintiff's counsel emailed Defendant the "expert disclosure of Advanced Access, LLC." (DN 35-5). The email included three attachments: (1) Plaintiff's 300-page Site Evaluation Report; (2) a copy of Plaintiff's Curriculum Vitae last updated in 2023; and (3) an August 27, 2025 invoice from Advanced Access, LLC, seeking payment for Plaintiff's time inspecting and drafting the Site Evaluation. (*Id.*).

According to Defendant, during Plaintiff's expert deposition on April 30, 2026, Plaintiff offered conflicting testimony regarding whether he is an ADA accessibility expert. (DN 35-1, at PageID # 821-22). Per Defendant, Plaintiff first testified that he was not an expert but later after speaking to his counsel on a break testified that he *is* an ADA accessibility expert. (DN 35-1, at PageID # 821-22). Around 5:30 PM, the Parties agreed to suspend the deposition to be reconvened at a later date. (*Id.*). At 11:26 PM that same day, Plaintiff's counsel emailed Defendant's counsel three documents characterized as his "Supplemental Expert Disclosure" pursuant to Federal Rule of Civil Procedure 26(a)(2) and (e)." (DN 35-2). The documents included: (1) a revised Rule 34 Site Accessibility Evaluation; (2) Plaintiff's updated Curriculum Vitae; and (3) Plaintiff's Supplemental Expert Disclosure of Derek Mortland/Advanced Access LLC, executed April 30, 2026. (*Id.*). The discovery deadline in the case expired thirty-four minutes after Plaintiff's counsel provided the supplemental expert disclosure.

Defendant has filed a Motion to Strike Plaintiff's April 30, 2026 Supplemental Expert Reports. (DN 35). Defendant believes the timing and circumstances of Plaintiff's supplementation "underscore their improper purpose: to circumvent Rule 26, violate the Court's Scheduling Order,

and unfairly prejudice [Defendant].” (DN 35-1, at PageID # 823). More specifically, Defendant says Plaintiff's alleged “supplementation” constitutes an attempt to “retroactively recharacterize himself as a qualified accessibility expert” and improperly introduces new expert opinions and legal theories. (*Id.*).

i. Legal Standard

Parties are required, under Federal Rule of Civil Procedure 26(a)(2)(B), “to make mandatory disclosures about their experts.” *Matilla v. S. Ky. Rural Elec. Co-op. Corp.*, 240 F. App'x 35, (6th Cir. 2007). When a witness is retained or specially employed to provide expert testimony in the case, their expert disclosure must include a written report that contains:

- a complete statement of all opinions the witness will express and the basis and reasons for them;
- the facts or data considered by the witness in forming them;
- any exhibits that will be used to summarize or support them;
- the witness's qualifications, including a list of all publications authored in the previous 10 years;
- a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
- a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).

Parties are under an ongoing duty to supplement or correct an expert disclosure “if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]” *Id.* at (e). But courts distinguish “true supplementation” (e.g. correcting inadvertent errors or omissions) from gamesmanship. Wright & Miller, 8A Fed. Prac. & Proc. Civ. § 2049.11993 (3d. ed.). Parties are not permitted to

"supplement" an expert report with a "new and improved" expert report. *Id.*; *see also Corder v. Ethicon, Inc.*, No. 6:19-CV-273-REW-HAI, 2020 WL 13616867, at *6 (E.D. Ky. Nov. 6, 2020) (quoting Wright & Miller, 8A Fed. Prac. & Proc. Civ. § 2049.11993 (3d. ed.)).

ii. Analysis

Defendant argues, and Plaintiff does not contest, that Plaintiff's original expert disclosure did not comply with Rule 26(a)(2). The Court agrees. As identified by Defendant, Plaintiff's disclosure did not provide any "anticipated 'expert' testimony and opinions" and did not identify "facts or data" Plaintiff considered in preparing the Site Accessibility Evaluation. (DN 35-1, at PageID # 826). Moreover, Plaintiff's initial disclosure failed to include a list of authored publications from the last ten years, a list of cases where Plaintiff provided expert testimony over the last four years, and a statement of compensation to be paid for Plaintiff's "study." (*Id.*). Plaintiff's CV was also outdated. (*Id.*).

The question then is whether Plaintiff's supplemental expert report from April 30, 2026 was appropriate under Rule 26(e). Plaintiff states he did not learn his initial expert report was "incomplete" until his April 30, 2026 deposition when Defendant questioned whether the Site Accessibility Evaluation mentioned him being an expert or giving expert testimony. (DN 44, at PageID # 1998-2000). Defendant says the supplemental report is not appropriate under Rule 26(e) because it contains "new opinions and legal frameworks based on previously available information." (DN 35-1, at PageID # 827).

Documenting the substantive changes between Plaintiff's initial Site Accessibility Evaluation and the Revised Accessibility Evaluation, Defendant notes the following:

- The initial evaluation relied solely on the 2010 ADA Standards to establish alleged architectural barriers, whereas the revised evaluation adds a second set of standards - ICC/ANSI 171.01;

- The revised evaluation deletes 26 findings from the initial evaluation and changes "key measurements and analysis" upon which several other alleged findings were based; and

- The revised evaluation "adds factual bases concerning accessible guest-room dispersion" and includes the statement that "[h]otel staff mentioned during the Rule 34 inspection that Room 223 also only had 1 bed."

(DN 35-1, at PageID # 829-30; DN 35-2, at PageID # 1098-99). From Plaintiff's deposition, Defendant cites to testimony showing Plaintiff was aware of the ANSI A1171.01 standards prior to his August 2025 inspection of the La Quinta Inn. (DN 35-1, at PageID # 831). Likewise, Defendant asserts Plaintiff could have included all of the added information in his Initial Site Accessibility Evaluation. (*Id.*). Plaintiff's supplementations, according to Defendant, are a "calculated effort to evade damaging concessions" from his expert deposition. (*Id.*). Defendant reasons that Plaintiff's "belated attempt to comply with Rule 26(a)(2)," eight months after his initial disclosure, renders both disclosures untimely. (*Id.*, at PageID # 829).

Plaintiff largely declines to respond to Defendant's allegations that his supplemental report is inappropriate but states that Rule 26(e) allows him to supplement his report to include the ICC/ANSI 171.01 standards because Defendant's counsel questioned him in detail regarding these standards during his deposition. (DN 44, at PageID # 2002).

As demonstrated by the abundance of case law cited by Defendant, supplementation under Rule 26(e) is limited to "correcting inaccuracies" or "filling interstices" in an initial disclosure. *Bentley v. Highlands Hosp. Corp.*, No. 15-97-ART-EBA, 2016 WL 5867496, at *4 (E.D. Ky. Oct. 6, 2016) (quoting *Munchkin, Inc. v. Playtex Prods., LLC,* 600 F. App'x 537, 538 (9th Cir. 2015)). While courts permit parties to "fill gaps in initial reports when they later learn of the missing information[,]" they "have routinely rejected attempts to add new analyses, opinions, or theories under the guise of supplementation." *Id.* Nor does Rule 26(e) "bestow upon litigants unfettered freedom to rely on supplements produced after a court-imposed deadline." *Corder*, 2020 WL

13616867, at *6 (quoting *DAG Enterprises, Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 109 (D.D.C. 2005)). A party's duty to supplement their expert reports "does not give them the right to ignore the Court's deadlines, reopen discovery, find 'new facts,' generate new expert reports, and then claim different damages." *Id.* (quoting *DAG* Enterprises, 226 F.R.D. at 110). In other words, parties may not use Rule 26(e) to, in effect, submit a brand new report. *See United States v. 14.3 Acres of Land*, No. 07-CV-886-AJB-NLS, 2011 WL 2414348, at *4 (S.D. Cal. June 10, 2011).

Upon reviewing Plaintiff's supplemental expert report, the Court finds Plaintiff has done more than correct inaccuracies or gaps from the initial report. While the supplemental report does not rise to the level of a brand new report, it includes new theories (the ICC/ANSI 171.01 standards) and changed measurements and analyses, which were relied upon in the expert's initial findings. Plaintiff's supplemental expert disclosure, accordingly, goes beyond the permissible supplementation from Rule 26(e). *See Clark v. Louisville Jefferson Cnty. Metro Gov.*, No. 3:17-CV-419-GNS-CHL, 2023 WL 2316305, at *4 (W.D. Ky. Mar. 1, 2023).

B. Was Plaintiff's untimely disclosure substantially justified or harmless?

a. Legal Standard

When a purported supplemental report is found to not actually be a supplemental report under Rule 26(e), it will be considered an untimely disclosure. *See Diamond Resorts U.S. Collection Development, LLC v. Wesley Fin. Grp., LLC*, No. 3:20-CV-251-DCLC-DCP, 2025 WL 3298311, at *2 (E.D. Tenn. Nov. 26, 2025). As this Court has explained, "disclosures made the day before or the day of the discovery deadline" cannot be considered "timely" within the meaning of Rule 26(e). *Clark*, 2023 WL 2316305, at *4.

Rule 37(c)(1) requires exclusion of information or witnesses that are not timely disclosed under Rule 26 "unless the failure was substantially justified or is harmless." Fed. R. Civ. P.

37(c)(1); *see also Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (explaining that Rule 37 requires "absolute compliance with Rule 26(a)). In *Howe v. Akron*, the Sixth Circuit has adopted a five-factor test for analyzing whether an untimely disclosure was "substantially justified or harmless." *Howe v. City of Akron*, 801 F.3d 718, 747 (6th Cir. 2015). These factors are: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence. *Id.* at 747-48 (citing *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396-97 (4th Cir. 2014)). The *Howe* factors "lend themselves to the task at the heart of Rule 37(c)(1): separating 'honest,' harmless mistakes from the type of underhanded gamesmanship that warrants the harsh remedy of exclusion." *Bentley*, 2016 WL 5867496, at *10 (quoting *Howe*, 801 F.3d at 747, 749).

ii. Analysis

As to the first factor, Plaintiff says Defendant "cannot complain of any surprise" because Defendant engaged in gamesmanship by waiting until seven months after his deficient disclosure to take his expert deposition. (DN 44, at PageID # 2001). Per Plaintiff, Defendant was "surely" aware that his report had deficiencies but chose to depose him on the last day of the discovery period anyway. (*Id.*). Defendant responds that the timing of Plaintiff's "supplemental" report – the same day as his expert deposition and thirty-four minutes before the discovery deadline expired - constitutes unfair surprise. (DN 35-1, at PageID # 833-34). Defendant explains that this last-minute disclosure essentially rendered Plaintiff's expert deposition meaningless and hampered Defendant's ability to prepare its own supplemental or rebuttal expert before the close of discovery. (*Id.* at PageID # 834).

There are two elements of "surprise" to be considered here. First is whether Defendant was surprised by the filing of the supplemental expert report. Though it was not Defendant's duty to assess and report to Plaintiff regarding the sufficiency of his disclosure, *see* Fed. R. Civ. P. 26(e)(1) (the disclosing party bears responsibility for supplementing and correcting its disclosures), Defendant still had knowledge of such deficiencies in preparing to take Plaintiff's expert deposition. Defendant could have deduced that after questioning Plaintiff regarding these deficiencies, Plaintiff was likely to file a remedial, supplemental report. It follows that Defendant cannot claim total surprise from Plaintiff's filing the supplemental expert report.

The second inquiry is whether Defendant was unfairly surprised by the substantive information in the supplemental expert report. The Court finds it was. While Defendant could have anticipated a supplemental report being filed, Defendant could not know the contents of such report and could not foresee that Plaintiff would include new theories (the ICC/ANSI 171.01 standards) and change measurements and analyses. For these reasons, the "surprise" factor weighs slightly in Defendant's favor.

Turning to the second *Howe* factor, Plaintiff argues that Defendant had an opportunity to cure any surprise but "chose not to do so at its own peril." (DN 44, at PageID # 2001). According to Plaintiff, Defendant should have included a request for "further questioning of Mr. Mortland on his supplement" when it sought to extend discovery after his expert deposition. (*Id.* at PageID # 2003). In opposition, Defendant argues that curing the surprise would significantly disrupt the existing scheduling order and would result in substantial costs and delays. (DN 35-1, at PageID # 834-35). To properly address the supplemental reports, Defendant argues, it would have to re-depose Plaintiff and provide its own supplemental or rebuttal report. (*Id.*).

On the one hand, Plaintiff's attempts to blame Defendant for his own untimeliness by arguing Defendant should have requested to reopen discovery to cure the surprise are not persuasive. Because Plaintiff filed his supplemental disclosure at 11:26 PM on the day the discovery deadline expired, Defendant had only thirty-four minutes to timely request an extension of the discovery deadline. The timing of Plaintiff's disclosure thwarted Defendant's ability to cure the surprise. Sure, the Court can extend the discovery deadline to allow Defendant to reopen Plaintiff's expert deposition and to supplement its own expert report or retain a rebuttal expert. But a court's reopening of discovery to cure surprise "counsels against a finding of substantial justification or harmless[ness]." *Coleman v. Wal-Mart Stores East, LP*, No. 22-54-DLB-EBA, 2023 WL 7132938, at *4 (E.D. Ky. Oct. 30, 2023) (citing *Jackson v. Transp. Corp. of Am., Inc.*, No. 1:21-cv-01325-PAB, 2023 WL 3058158, at *7 (N.D. Ohio Apr. 24, 2023)); *see also RJ Control Consultants, Inc. v. Multiject, LLC*, 100 F. 4th 659, 669 (6th Cir. 2024). Reopening discovery at this late stage would not only impose financial burden on Defendant, it would result in delays at this late stage of litigation.

On the other hand, Defendant has twice moved to extend discovery following the filing of Plaintiff's supplemental expert disclosure for other reasons, which somewhat negates the Defendant's allegations that the surprise could not be cured. And Defendant represents that Plaintiff's expert deposition was meant to be continued once the disputes regarding written discovery were resolved. That the Parties intended to continue Plaintiff's expert deposition even *before* Plaintiff filed the supplemental expert disclosure further negates Defendant's alleged inability to cure the surprise. On balance, the second factor is neutral.

For the third factor, Plaintiff states "[t]here would be no disruption at trial" because "no trial date has been set in this case." (DN 44, at PageID # 2001-02). Defendant counters that the

diversion of resources that would be required if the supplemental report is permitted would delay trial by shifting focus from dispositive motions and trial preparations to addressing Plaintiff's new theories, information, and opinions. (DN 35-1, at PageID # 835-36). Permitting Plaintiff to rely on a post-deadline, post-deposition "supplemental" disclosure, Defendant urges, would reward noncompliance with the Scheduling Order. (*Id.*, at PageID # 836).

It is true that no trial date has been set in the case. And Defendant has requested that the scheduling order deadlines be briefly extended following resolution of the pending fact and expert discovery issues. (*See* DN 47; DN 52). With no trial date and the deadlines for dispositive motions not being set in stone, the third factor weighs slightly in Plaintiff's favor.

Addressing the fourth factor, Plaintiff advocates the supplemental report "is essential to the merits of [his] claims." (DN 44, at PageID # 20001, 2003). Plaintiff accuses Defendant of not being interested "in the search for truth." (*Id.*). Though conceding that the evidence from the supplemental report is important to Plaintiff's claims, Defendant argues the evidence is not admissible simply because Plaintiff needs it to survive summary judgment. (DN 35-1, at PageID # 837). On the contrary, Defendant maintains that "the more essential the evidence, the greater the prejudice caused by its untimely disclosure[.]" (*Id.*). The importance of the expert opinion in this case, Defendant concludes, does not override the need for their exclusion. (*Id.* (citing *Estes v. King's Daughters Med. Ctr.*, 59 F. App'x 749, 754 (6th Cir. 2003))).

The importance-of-the-evidence factor "cut[s] both ways" in that "[t]he more important the proof, the greater the effect of preclusion, but also the greater the harm in tardy disclosure." *EQT Prod. Co. v. Magnum Hunter Prod., Inc.*, No. 5:16-CV-150-JMH-REW, 2017 WL 2295906, at *5 (E.D. Ky. May 25, 2017) (collecting cases); *see also Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 220 (6th Cir. 2019)). Both parties and the Court agree to the importance of Plaintiff's

supplemental report. Exclusion of the report could be fatal to Plaintiff's claims. Considering this importance, Plaintiff should have included it in its initial expert disclosure, knowing that his claims could be dismissed without it. Instead, Plaintiff waited seven months after the initial disclosure, *after* his expert deposition, and moments before the discovery deadline passed to insert this critically important evidence. The harm in Plaintiff's tardy disclosure was serious. *See Diamond Resorts*, 2025 WL 3298311, at *5.

With that said, excluding otherwise admissible testimony critical to Plaintiff's claims could "seriously compromise the balance of the trial presentations." *Redmond*, 194 F. Supp. 3d at 614. The effect of preclusion would likewise be serious. *See Diamond Resorts*, 2025 WL 3298311, at *5. On balance, this factor is neutral.

While admitting the fifth factor is "somewhat less favorable" to his position, Plaintiff insists there was substantial justification for the timing of his supplement because it was caused by inadvertent human error. (DN 44, at PageID # 2001-02). Plaintiff submits that Rule 26(e) was designed to accommodate this type of error and that "[a]s soon as the error was revealed, supplements and corrections were immediately made." (*Id.* at PageID # 2002). Defendant advocates that Plaintiff has not provided any justification for his untimely disclosure of the supplemental reports. (DN 35-1, at PageID # 837-38). Nor is any justification apparent from the circumstances, according to Defendant, because this information was available at the time of the initial disclosure, but Plaintiff delayed in providing this information until after his expert deposition and moments before the discovery deadline expired. (*Id.*). Defendant further posits that Plaintiff's decision to provide untimely disclosures was motivated by bad faith. (*Id.*).

The final factor, the party's explanation for its failure to disclose the evidence, carries the most weight. *Corder*, 2020 WL 13616867, at *4. "Embedded in this factor is requirement of due

diligence." *Id.*; *see also Vaughn v. City of Lebanon*, 18 F. App'x 252, 263 (6th Cir. 2001) (finding that party's "failure to use due diligence in meeting the deadlines" supported exclusion of expert).

The notion that Plaintiff believed his initial expert disclosure complied with Rule 26(e) and continued in this belief until the Defendants questioned him during his expert deposition is somewhat dubious. This is especially true when considering that Plaintiff is a serial litigant with over 140 similar cases filed since 2021. It is also difficult to call Plaintiff "diligent" when he had seven months to supplement his report. But if the Court accepts Plaintiff's representations that he was not aware of the deficiencies until his expert deposition, he rectified the deficiencies within a few hours of being deposed. The timing was not ideal. Yet, once more, Defendant says that Plaintiff's expert deposition was going to be continued regardless of the supplemental disclosure because of outstanding written discovery. Under these circumstances, Plaintiff's late disclosure appears to be substantially justified.

This case presents a close call. Two factors weigh slightly in favor of exclusion, two weigh slightly against exclusion, and one is neutral. On this analysis, the Court cannot find that exclusion of Plaintiff's supplemental report is warranted under Rule 37. Yet because of Plaintiff's last-minute disclosure, Defendant was unable to depose Plaintiff on the new information in his supplemental report and was unable to provide its own supplemental rebuttal if necessary. The Court, accordingly, will reopen the discovery period for forty-five days to permit Defendant to re-depose Plaintiff as an expert witness and to secure any necessary rebuttal witness testimony.

## III. Motion for Protective Order (DN 43)

### A. Dispute

Defendant served its Second Set of Requests for Production on Plaintiff on March 27, 2026, requesting, among other things, spreadsheets and related materials reflecting Plaintiff's prior

accessibility inspections and litigation-related activities, and Plaintiff's personal income tax returns. (DN 43-1, at PageID #1631). Plaintiff objected to producing those categories of documents. The Court convened a telephonic conference to discuss these issues, and following the call, ordered the Parties to meet and confer regarding Plaintiff's objections. (DN 37). In a joint status report filed on May 8, 2026, the Parties indicated that Plaintiff maintained its objections to the two disputed categories of documents. (DN 39). The Court then permitted Plaintiff to file a motion for protective order but denied his request for entry of a standard protective order in the interim. (DN 40).

B. Legal Standard

The scope of discovery under Federal Rule of Civil Procedure 26(b) is quite broad, allowing discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b). The party requesting discovery has the burden of demonstrating the information it seeks is relevant to the claims and defenses in the case. *United States v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, No. 1:21-CV-84-TRM-SKL, 2024 WL 5656581, at *2 (E.D. Tenn. Aug. 13, 2024) (citing *Queen v. City of Bowling Green*, No. 1:16CV-00131-JHM, 2017 WL 4355689, at *7 (W.D. Ky. Sept. 29, 2017)). If the moving party proves relevance, the burden shifts to the party resisting production to establish "the information is either not relevant or is so marginally relevant that the presumption of broad disclosure is outweighed by the potential for undue burden or harm." *Id.* (quoting *Wagner v. Circle W Mastiffs*, No. 2:08-cv-431, 2013 WL 4479070, at *3 (S.D. Ohio Aug. 19, 2013) (citation omitted))).

Under Rule 26(c)(1), courts may, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). In ordering such protection, courts may "forbid [] . . . discovery" or may "prescribe []

a discovery method other than the one selected by the party seeking discovery[.]" *Id.* at (c)(1)(A), (C). The Sixth Circuit holds that "[g]ood cause exists if 'specific prejudice or harm will result' from the absence of a protective order." *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236-37 (6th Cir. 2016) (quoting *Father M. v. Various Tort Claimants (In re Roman Catholic Archbishop)*, 661 F.3d 417, 424 (9th Cir. 2011)). The movant "must articulate specific facts showing clearly defined and serious injury resulting from the discovery sought and cannot rely on mere conclusory statements." *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001).

C. Analysis

i. RFP Nos. 20 and 21

Defendant's Request for Production No. 20 seeks production of "all spreadsheets and other documents that relate to lawsuits filed by or on behalf of Mr. Mortland." (DN 43-2, at PageID # 1647). Similarly, RFP No. 21 requests "all spreadsheets and other documents that relate to work or services performed by Mr. Mortland, either individually or on behalf of Advanced Access, LLC, in connection with any lawsuit." (*Id.*).

Plaintiff argues the litigation-spreadsheets requested in RFP No. 20 are protected work product and opinion work product that was compiled by Plaintiff in his capacity as an accessibility consultant and expert retained by counsel in direct connection with pending or anticipated litigation. (DN 43-1, at PageID # 1634). Plaintiff also contends the information from the spreadsheets is publicly available and already in Defendant's possession based on Defendant's representation that it compiled a list of at least 140 cases where Plaintiff has appeared by searching PACER. (*Id.* at PageID # 1635). According to Plaintiff, the requested spreadsheets are also "wildly disproportionate to the needs of a case that concerns a single stay at a Louisville hotel . . . in June 2024." (*Id.* at PageID # 1635-36).

Similarly, as to the spreadsheets and documents requested in RFP No. 21, Plaintiff maintains any work and services performed by Advanced Access, LLC in connection with other accessibility litigation are protected as classic work product since they were compiled and prepared by Plaintiff in his expert capacity. (*Id.* at PageID # 1636). Plaintiff further argues the materials requested bear no relevance to the claims and defenses in this action and that because Defendant has the site-accessibility report Plaintiff completed, it has everything it needs to challenge Plaintiff's expert opinions regarding this property. (*Id.* at PageID # 1636-37). Production of Advanced Access materials from other engagements, Plaintiff concludes, would improperly invade the confidential attorney-client and work-product relationships in those matters and Defendant has not shown that those third parties consent to production of their retained expert's work. (*Id.* at PageID # 1637).

Lastly, Plaintiff opposes Defendant's theories of relevance. As to whether the spreadsheets are relevant to Defendant's pending Motion to Strike (DN 35), Plaintiff explains a litigant's status as "a serial ADA enforcer or 'tester' does not negate injury, undermine standing, or support dismissal of otherwise cognizable claims." (DN 43-1, at PageID # 1638 (citing *Mosley v. Kohl's Dep't Stores, Inc.*, 942 F.3d 752, 758-60 (6th Cir. 2019)). The spreadsheets are also not relevant to Plaintiff's KCPA claim, Plaintiff explains, because his broader pattern of inspecting hotels after determining they are inaccessible is immaterial to whether Defendant's accessibility representations for the La Quinta Inn & Suites were truthful. (*Id.* at PageID # 1638-39).

In response, Defendant asserts that documents responsive to Request Nos. 20 and 21 are not attorney work product because Plaintiff testified that the spreadsheets contain information he otherwise cannot provide from memory and that he has not provided the spreadsheets to his attorney or been asked to provide them to his attorney. (DN 50, at PageID # 2867-70). Nor do the

spreadsheets qualify for attorney-client privilege, Defendant argues, because Plaintiff testified the spreadsheets are broken down by property and track ordinary billing information, none of which qualifies as privileged information. (*Id.* at PageID # 2670-71).

Defendant further maintains that Plaintiff's arguments fail to account for his obligations as an expert under Rule 26(c)(2)(B) in this case. (*Id.*, at PageID # 2871-73). Defendant says the Federal Rules do not allow Plaintiff to offer opinions and rely on his qualifications and litigation experience but then withhold the records addressing the scope of such experience. (*Id.* at PageID # 2872). And, Defendant concludes, the spreadsheets and documents requested are "uniquely within [Plaintiff's] possession and cannot reasonably be obtained from another source" since PACER does not contain information regarding which properties Plaintiff visited, inspected, evaluated, billed, and used as a basis for claims in other cases. (*Id.* at PageID # 2873).

Starting with relevance, the Court agrees that information in the spreadsheets could bear on Plaintiff's potential bias as a testifying expert in this case. Courts have frequently found "that an expert witness' financial information is discoverable if its purpose is to uncover potential bias." *In re FTCA Flint Water Cases*, No. 17-cv-11218, 2025 WL 3451642, at *11-12 (E.D. Mich. Dec. 1, 2025) (collecting cases); *see also DaVita Inc. v. Marietta Memorial Hosp. Employee Health Benefit Plan*, No. 2:18-cv-1739, 2025 WL 2088378, at *3 (S.D. Ohio July 25, 2025) (finding discovery of a witness' bias, including the expert's financial information, is "relevant under Rule 26(b)(1)'s expansive scope."); *see also Campos v. MTD Products, Inc.*, No. 2-07-0029, 2009 WL 920337, at *4-5 (M.D. Tenn. Apr. 1, 2009) (citing *Behler v. Hanlon*, 199 F.R.D. 553, 561 (D. Md. 2001) (requiring party to provide in discovery the percentage of the expert's income derived from expert witness services on behalf of insurance companies and/or attorneys defending personal injury cases, a list of cases in which he has provided such services in the last five years with the

names of the attorneys, and the names of the insurance companies for which the expert provided expert services in the last ten years); *Burger v. Allstate Ins. Co.*, No. 07-11870, 2009 WL 1587396, at *2 (E.D. Mich. June 8, 2009).

Contrary to Plaintiff's suggestion, Defendant cannot obtain the information from the spreadsheets from PACER. That database would not include Plaintiff's financial information from expert services. Nor can Plaintiff credibly claim that it would be less burdensome for Defendant to somehow locate and compile this information. As Plaintiff testified during his deposition – he has already compiled the information regarding his own inspections and expert services, as well as those under Advanced Access, into the spreadsheets that Defendant now seeks. Accordingly, Plaintiff's claims regarding proportionality fail.

Plaintiff's arguments as to work product and attorney-client privilege fare no better. The work-product doctrine shields "an attorney's trial preparation materials from discovery to preserve the integrity of the adversarial process." *Hines v. Safeco Ins. Co. of Am.*, No. 3:18-CV-00304-JRW-RSE, 2020 WL 5237525, at *2 (W.D. Ky. Sept. 2, 2020) (quoting *Shaheen v. Progressive Cas. Ins. Co.*, No. 5:08-CV-00034-R, 2012 WL 3644817, at *5 (W.D. Ky. Aug. 24, 2012) (add'l citations omitted)). Rule 26(b)(3) separates work product into two categories: "ordinary" work product and "opinion" work product. *See In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986). Ordinary work product is: (1) "documents and tangible things"; (2) "prepared in anticipation of litigation or for trial"; (3) by another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). Opinion work-product is "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *Id.* at (b)(3)(B).

Plaintiff has not shown the spreadsheets were prepared in anticipation of litigation or for trial. During his deposition, Plaintiff testified that he has two spreadsheets. (DN 44-1, at PageID # 2047). One covers "income and expenses" or "accounting documents" where he has retained himself as a litigation and accessibility expert. (*Id.*). The second is a list of cases where he is a plaintiff. (*Id.*). The driving force behind Plaintiff's creation of these spreadsheets was not anticipated litigation. While these spreadsheets may reflect some aspects of ongoing litigation, such as whether Plaintiff has been paid a fee for his expert work, or the procedural status of cases, they were created by Plaintiff in the ordinary course of his business as an ADA tester and accessibility expert. Nowhere does Plaintiff demonstrate that he created either spreadsheet to assist in a specific case or at the direction of his counsel. Quite the contrary, Plaintiff testified at his expert deposition that he did not provide the spreadsheets to his attorney and has not been asked to do so. (DN 44-1, at PageID # 2048). This further thwarts Plaintiff's work-product arguments.

Additionally, Plaintiff has not demonstrated that these spreadsheets include "the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation" sufficient to establish "opinion work product." Fed. R. Civ. P. 26(b)(3)(B). Plaintiff explains that the spreadsheets track the properties by name, inspection date, invoice amount, and payment status. None of those categories even hints at any mental impression or opinion of counsel. Again, Plaintiff testified that he never produced and was never asked to produce these spreadsheets to his counsel, which begs the question of how any mental impressions or opinions of his counsel could be included. For these reasons, Plaintiff's claims of opinion work-product fail.

Plaintiff also alleges that production of the Advanced Access materials responsive to RFP No. 21 would "improperly invade the confidential attorney-client and work product relationships

in those other matters" since Advanced Access was "retained by various attorneys in other pending litigations as a consulting and testifying expert." The attorney-client privilege applies "(1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived." *Carhartt, Inc. v. Innovative Textiles, Inc.*, 333 F.R.D. 113, 116 (E.D. Mich. 2019) (quoting *Reed v. Baxter*, 134 F.3d 351, 355-56 (6th Cir. 1998), *cert denied*, 525 U.S. 820 (1998)). Like Plaintiff's prior work-product arguments, his claim of privilege fails. Once more, Plaintiff does not demonstrate that legal advice of any kind was sought from counsel or a legal adviser in these spreadsheets. Plaintiff cannot create attorney-client privilege by simply noting his/Advanced Access' status as a contracting expert.

Because Defendant has demonstrated the relevance of the spreadsheets requested in RFP Nos. 20 and 21 and because Plaintiff cannot prove that work-product protection or attorney-client privilege applies, Plaintiff must provide the responsive documents within fourteen (14) days entry of this Order.

ii. RFP No. 22

In Request for Production No. 22, Defendant moves Plaintiff to "produce Mr. Mortland's federal and state tax returns for tax years 2020 through 2025." (DN 43-1, at PageID # 1631).

Plaintiff argues such tax returns are protected by the qualified privilege against compelled disclosure. (DN 43-1, at PageID # 1639). Under the two-pronged test from *Polylok, Inc. v. Bear Onsite, LLC*,, Plaintiff argues his tax returns are not relevant and there is not a compelling need for production. (*Id.*, at PageID #1640 (citing No. 312-CV-00535-DJH-CHL, 2017 WL 1102698, at *4 (W.D. Ky. Mar. 23, 2017))). The returns are not relevant, Plaintiff explains, because state

law claims under KRS Chapter 344 and the KCPA seek damages unrelated to the Plaintiff's income or financial situation, such as emotional-distress, humiliation, dignitary, and punitive damages. (*Id.*). Plaintiff concludes there is no compelling interest in production of the tax returns because the information can be obtained through less invasive methods, such as his Rule 26(a)(2)(B) disclosures, deposition testimony, fee schedules, and invoices that have been supplied. (*Id.*).

Defendant responds that Plaintiff's personal federal and state income tax returns are discoverable and relevant because they directly reflect Plaintiff's financial interest and motive as an individual and expert witness. (DN 50, at PageID # 2874). Additionally, Defendant argues that Plaintiff has not shown undue burden as to the accessibility of the tax returns, and there are no privacy concerns warranting blanket protection from the Court. (*Id.*). Defendant urges the Court to consider Plaintiff's prior willingness to produce redacted documents reflecting income from inspection or expert work under Attorney's-Eyes-Only protection. (*Id.*, at PageID # 2876).

The requested documents, Defendant argues, are also relevant to their defenses, as well as Plaintiff's Article III standing and KCPA claims. (*Id.*, at PageID #2878). The Defendant asserts that the documents will show whether the Plaintiff had intent to return to the La Quinta Inn as required for ADA Article III standing. (*Id.* (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992))). Defendant cites to several court decisions where a plaintiff's status as a serial filer impacted the credibility of their assertions as to ADA Article III standing. (*Id.*). Defendant concludes that the already available documents are not sufficient to determine the full intent of the Plaintiff. (*Id.*).

No blanket privilege prohibits tax returns from discovery. *DeMarco v. C & L Masonry, Inc.*, 891 F.2d 1236, 1240 (6th Cir. 1989). District courts within the Sixth Circuit apply a two-part

test to determine whether the discovery of tax returns is permissible: (1) the tax returns are relevant; and (2) they contain information that cannot be obtained from other sources. *Shelbyville Hosp. Corp. v. Mosley*, No. 4:13-CV-88, 2017 WL 1155046, at *4 (E.D. Tenn. Mar. 27, 2017) (citing *Smith v. Mpire Holdings, LLC,* No. 3:08-0549, 2010 WL 711797, at *1 (M.D. Tenn. Feb. 22, 2010); *Burket v. Hyman Lippitt, P.C.*, Nos. 05-CV-72110, 2007 WL 2214302, at *2 (E.D. Mich. July 27, 2007) (add'l citations omitted)). As a matter of policy, however, courts caution against the unnecessary disclosure of tax returns. *Id.* (citing *Terwilliger v. York Intn'l Corp.*, 176 F.R.D. 214, 216 (W.D. Va. 1997)). Even when tax returns are found to be relevant, courts will often order redaction of portions of the tax returns to alleviate confidentiality concerns. *See, e.g., Kumar v. Hilton Hotels Corp.*, No. 08-2689 D/P, 2009 WL 3681837, at *3 (W.D. Tenn. Oct. 30, 2009) (redacting confidential information from tax returns relating to plaintiff's spouse); *Westbrook v. Charlie Sciara & Son Produce Co*., No. 07-2657, 2008 WL 839745, at *3-4 (W.D. Tenn. Mar. 28, 2008).

Defendant satisfies this test. The tax return information is relevant because it bears directly on Plaintiff's financial interests and potential bias, since Plaintiff has repeatedly filed lawsuits and served as a legal expert witness in such suits.[5] And there are no other means of collecting necessary financial materials from Advanced Access LLC, as the Plaintiff testified such information would only be included within his personal tax returns. In addition, Defendant has already agreed to permit Plaintiff to redact irrelevant personal identifiers, dependent information, and purely spousal information unrelated to Plaintiff's income, Advanced Access, accessibility inspections, expert work, consulting services, litigation-related income, hotel stays, travel, claimed damages, or business expenses.

[5] Despite the District Judge's recent ruling denying Defendant's Motion to Declare Plaintiff a Vexatious Litigant (*see* DN 56), the Court still finds that Plaintiff's personal tax returns are relevant to Defendant's allegations of bias.

For these reasons, the Court orders production of Plaintiff's personal tax returns filed for the years 2020 through 2025 within fourteen (14) days of this Order. Plaintiff, however, may make redactions to the information as agreed upon by the Parties.

IV. Dispute Regarding Reasonableness of Expert Fees

The Parties also failed to resolve a dispute regarding the reasonableness of the expert fee Plaintiff has requested. (*See* DN 40). Plaintiff requests an hourly rate of $459.00 for deposition testimony and an hourly rate of $859.00 for video or trial testimony. (Ex. 1 – Plaintiff's Memo). Such rates are reasonable, according to Plaintiff, based on his being the president of Advanced Access, LLC from 2018-2023, an ADA Coordinator from 2013 to 2018, and a Project Coordinator in areas involving the ADA from 2004 to 2006. (*Id.*). Plaintiff emphasizes that in another civil action involving the ADA where he was acting as an expert, he was paid $918.00 based on an hourly rate of $459.00 for a deposition lasting less than two hours. (*Id.*).

Defendant responds that Plaintiff's requested rates are unreasonable because Plaintiff lacks formal training, education, and recognized methodology in ADA accessibility or hospitality compliance. (Ex. 2- Defendant's Memo). Defendant highlights Plaintiff's deposition testimony that his knowledge of the ADA comes directly from "on-the-job training," reading the ADA, and self-instruction. (*Id.*). Comparing Plaintiff's qualifications to its own expert, Dr. Aerik Carlton, Defendant describes how Dr. Carlton has a Ph.D. in Structural Engineering, an M.S. in Civil Engineering, a B.S. in Civil Engineering, has worked as a doctoral fellow at the Rossin College of Engineering, and is a licensed professional engineer with extensive experience in structural and civil engineering matters. (*Id.*). Defendant points out that despite Dr. Carlton's credentials and experience, his deposition fee is $280.00 per hour, significantly less than the amount Plaintiff requests. (*Id.*).

Under the ADA, the district court may in its discretion allow "the prevailing party . . . a reasonable attorney's fee, including litigation expenses and costs." 42 U.S.C. § 12205. The prevailing party's expert fees fall into litigation expenses and costs. *See Betancourt v. Indian Hills Plaza LLC*, 87 F.4th 828, 831-32 (6th Cir. 2023) (affirming district court's decision to reduce expert fee in ADA case from $7,500 to $2,000.00). The Parties' dispute regarding the reasonableness of Plaintiff's requested fee is premature. Plaintiff is not "the prevailing party" because the case has not reached final adjudication. On this logic, Plaintiff's threats and attempts to demand advance payment of his expert deposition fee fail. If later in the case Plaintiff satisfies the "prevailing party" requirement, he can seek reasonable expert fees for his services and Defendants will have the opportunity to challenge the reasonableness of such fees.

V. Motions for Extension of Time (DN 47; DN 52)

While Plaintiff's Motion for Protective Order was being briefed, Defendant filed two motions for extension of time. The first requested the deadline for fact discovery be extended until the Court resolved the pending discovery disputes and Plaintiff produces any documents the Court orders him to produce. (DN 47). Specifically, Defendant explained it could not complete the second day of Plaintiff's expert deposition because Plaintiff had not produced the outstanding spreadsheets and tax returns. (*Id.*). Plaintiff opposed this extension, arguing that simply because the Court "has not yet ruled on Mortland's pending Motion for Protective Order or on the Parties' expert-fee dispute does not establish good cause to extend any deadline; it is the predictable result of motion practice that the Court itself authorized." (DN 48).

Defendant's second request for an extension of time seeks to extend all pretrial deadlines in the case because several case-dispositive and discovery-related matters remain pending before the Court. (DN 52). Defendant notes that its currently pending Motion to Strike may materially

alter the remaining pretrial schedule and could result in Plaintiff being excluded as a permissible expert witness. (*Id.*). Plaintiff objected to Defendant's proposed extensions of the scheduling order deadlines, again arguing that indefinite extensions would prejudice Plaintiff by further delaying the case. (DN 53).

Because the Court already determined that a forty-five-day extension of the discovery period was warranted based on Plaintiff's untimely supplemental expert disclosure, the Court will deny Defendant's further requests for extension of time as moot.

VI. Order

**IT IS THEREFORE ORDERED** that Defendant's Motion to Strike Plaintiff's Expert Reports (DN 35) is **DENIED.** However, the Court will **EXTEND** the discovery deadline for a period of **forty-five (45) days** from date of entry of this Order to permit Defendant to secure any necessary discovery stemming from Plaintiff's late filing of his supplemental expert report.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Protective Order (DN 43) is **DENIED.** Plaintiff shall produce responsive documents to Defendant's RFP Nos. 20, 21, and 22 within **fourteen (14) days** entry of this Order.

**IT IS FURTHER ORDERED** that the Parties' dispute regarding the reasonableness of Plaintiff's expert fee is **premature** and may be renewed later if Plaintiff can establish he is the prevailing party in this action.

**IT IS FURTHER ORDERED** that Defendant's additional Motions for Extension of Time (DN 47; DN 52) are **DENIED as moot.**

**IT IS FURTHER ORDERED** that at the Parties shall file a **joint status report** by **November 30, 2026**, indicating their compliance with the above directives and otherwise updating

the Court on the status of the case and whether any additional extensions of the scheduling order deadlines are necessary.

Regina S. Edwards, Magistrate Judge
United States District Court

Copies: Counsel of Record

October 16, 2026